FILED

03/14/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0799

DA 14-0799

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 60

STATE OF MONTANA,

Plaintiff and Appellee,

v.

CHRISTINA LOUISE HARRISON,

Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 13-464
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Nancy G. Schwartz, N.G. Schwartz Law, PLLC, Billings, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

Kirsten H. Pabst, Missoula County Attorney, Jennifer Clark, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs:  February 1, 2017

Decided:  March 14, 2017

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Christina Harrison fled the hospital after being transported there for a blood draw following her arrest for driving under the influence. Harrison sought to dismiss the resulting tampering with evidence charge. The District Court denied her motion and a jury convicted Harrison of tampering with evidence.[1] We reverse and remand.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 A Missoula police officer pulled Harrison over in September 2013 after observing her driving at night with no headlights. After making contact with Harrison and observing various signs of intoxication, the officer administered preliminary field sobriety tests. Harrison failed the tests, and the officer asked her to take a preliminary breath test, which she refused.

¶3 The officer placed Harrison under arrest and transported her to the police station, where the officer applied for a telephonic search warrant to obtain a blood sample from Harrison. After obtaining the warrant, the officer transported Harrison to the hospital for a blood draw. There, the officer removed Harrison's handcuffs to facilitate the blood draw. While the officer was filling out paperwork, Harrison fled. She was not located until the next day.

¶4 The State charged Harrison with tampering with or fabricating physical evidence in violation of § 45-7-207, MCA. The charge was based on Harrison's leaving the hospital and thereby preventing a blood sample from being drawn. Harrison sought

---

[1] The jury also convicted Harrison of driving under the influence and escape. Harrison does not challenge those convictions.

2

dismissal of the tampering charge on the ground that blood is not evidence until it is removed from the body. She relied on our decision in *State v. Peplow*, 2001 MT 253, 307 Mont. 172, 36 P.3d 922, to support her position.

¶5    The District Court denied Harrison's motion. Harrison renewed her motion following the State's presentation of evidence, and the District Court again denied it. The jury found Harrison guilty. The court sentenced Harrison to a period of four years with all four years suspended for the tampering count. Harrison appeals her conviction and sentence for tampering.

## STANDARD OF REVIEW

¶6    We review a district court's decision on a motion to dismiss in a criminal case de novo. *State v. Nelson*, 2014 MT 135, ¶ 16, 375 Mont. 164, 334 P.3d 345. When the dismissal is based upon the interpretation or construction of a statute, we determine whether the district court's interpretation or construction is correct as a matter of law. *Nelson*, ¶ 16.

## DISCUSSION

¶7    *Whether the District Court erred in concluding that Harrison's blood, while still within her body, constituted physical evidence subject to tampering.*

¶8    The District Court found Harrison's arguments for dismissing the tampering count "pretty compelling," but it "vacillated back the other way" after considering the State's brief. After noting that there had recently "been a change in the law," the court opined that this was "an issue that ought to be resolved" by this Court. The court concluded that

3

it was "going to let this evidence go forward," and that it would "go forward on all three counts."

¶9 On appeal, Harrison asserts that our holding in *Peplow* controls. She contends that legislative changes to the implied consent statutes do not alter our ruling in that case. Harrison accordingly argues that the District Court erred in not dismissing the tampering charge.

¶10 The State counters by contending that *Peplow* is factually distinguishable from the instant case and was limited to the specific issue we considered in that case. Thus, the State asserts that *Peplow* is inapplicable. The State argues that even if *Peplow* is applicable, it is no longer controlling given amendments to the relevant statutory provisions.

¶11 In *Peplow*, the defendant was charged with tampering with evidence under § 45-7-207, MCA. *Peplow*, ¶ 11. The tampering charge was based on the fact that the defendant consumed alcohol following an accident and prior to his blood alcohol level being tested. *Peplow*, ¶ 11. We framed the issue as whether "consuming alcohol after a vehicle accident constitute[d] tampering with physical evidence under § 45-7-207, MCA." *Peplow*, ¶ 18.

¶12 Section 45-7-207, MCA, provides in pertinent part:

A person commits the offense of tampering with or fabricating physical evidence if, believing that an official proceeding or investigation is pending or about to be instituted, the person:

4

(a) alters, destroys, conceals, or removes any record, document, or thing with purpose to impair its verity or availability in the proceeding or investigation[.]

Section 45-7-207(1)(a), MCA. We noted in *Peplow* that while "physical evidence" is not defined in the tampering statute, "evidence" is defined in § 26-1-101(2), MCA. *Peplow*, ¶ 21. That section defines "evidence" as "the means of ascertaining in a judicial proceeding the truth respecting a question of fact, including but not limited to witness testimony, writings, physical objects, or other things presented to the senses." Section 26-1-101(2), MCA. Reading the tampering statute together with the statutory definition of evidence, we clarified that the specific issue to be decided in *Peplow* was "whether a person's blood alcohol content, as it exists inside their body and within their control, constitutes 'physical evidence,' or a 'thing presented to the senses.'" *Peplow*, ¶ 22 (quoting § 45-7-207, MCA, and § 26-1-101(2), MCA).

¶13 In concluding that blood within an individual's body does not constitute physical evidence or a thing presented to the senses, we emphasized that "evidence of alcohol or drugs in a person must be 'shown by an analysis of the person's blood or breath' for it to be admissible." *Peplow*, ¶ 25 (quoting § 61-8-404, MCA). "Stated otherwise," we clarified, one's blood alcohol level "is not evidence until it exists in a state capable of analysis." *Peplow*, ¶ 25. We pronounced:

Section 61-8-404, MCA, clearly does not contemplate that <u>potentially</u> measurable amounts of alcohol, still within the human body, constitute evidence. Until one's breath or blood has been obtained or collected for analysis, it simply cannot be considered "physical evidence," as set forth in § 45-7-207, MCA, or a "thing presented to the senses," as explained in § 26-1-101(2), MCA. Because a person's blood alcohol level cannot be

5

determined until he or she expels either a sample of blood, air, or urine, such fluids simply cannot be considered physical evidence prior to being removed from the body. We therefore conclude that physical evidence of one's alcohol content is limited to that which is collected for analysis of the person's blood or breath, under § 61-8-404, MCA. One's blood, and blood alcohol level, while still within his body, simply is not physical evidence.

*Peplow*, ¶ 26. Such a conclusion, we stressed, "avoids absurd results." *Peplow*, ¶ 27. We thus held that "the District Court erred when it held that Peplow's [blood alcohol level], while still within his body, constituted physical evidence subject to illegal tampering." *Peplow*, ¶ 28.

¶14 The State's contentions that the facts and issue presented in *Peplow* limit its application are misplaced. The fact that Peplow drank following an accident and prior to having his blood alcohol level tested did not prove central to our ultimate conclusion that "[o]ne's blood, and blood alcohol level, while still within his body, simply is not physical evidence." *Peplow*, ¶ 26. Similarly, the fact that we initially framed the issue as whether "consuming alcohol after a vehicle accident constitute[d] tampering with physical evidence under § 45-7-207, MCA," did not confine our final holding that "the District Court erred when it held that Peplow's [blood alcohol level], while still within his body, constituted physical evidence subject to illegal tampering." *Peplow*, ¶ 28. We are further unpersuaded by the State's assertion that these explicit conclusions following detailed analysis are dicta.

¶15 Contrary to the State's argument, the Legislature's amendments to the implied consent statute, § 61-8-402(5), MCA, and the statute defining what may be seized with a

search warrant, § 46-5-224(1), MCA, do not impact *Peplow*'s authority here. The issue *Peplow* addressed—and the issue on appeal here—is whether an individual's blood, while still in her body, constitutes "physical evidence" under § 45-7-207, MCA. *Peplow*, ¶¶ 22, 28. While we cited other statutes in addressing this question—including § 61-8-402(1), MCA—our holding that blood inside an individual's body does not constitute evidence subject to tampering rested on our interpretation of § 45-7-207, MCA, the definition of "evidence" under § 26-1-101(2), MCA, and what constitutes admissible evidence under § 61-8-404(1)(a), MCA. *Peplow*, ¶¶ 21-26. The relevant portions of those statutes have not been amended since our decision in *Peplow*.

¶16 The Legislature has enacted provisions allowing officers to obtain a search warrant for a driver's blood in certain circumstances. Section 46-5-224(1), MCA—which the State emphasizes heavily—now provides that a "warrant may be issued under this section to search for and seize any . . . evidence, including blood samples that may yield evidence of any measured amount or detected presence of alcohol or drugs in a person's body when subjected to testing." This statute makes plain that blood samples may be seized pursuant to a search warrant. That does not, however, change what constitutes "evidence" in the first place. For starters, blood is not a "sample" until it is withdrawn. Plus, the new language references blood samples "that *may yield* evidence." Section 46-5-224(1), MCA (emphasis added). Finally, lack of a search warrant to draw Peplow's blood was not pertinent to our conclusion that "[o]ne's blood, and blood

7

alcohol level, *while still within his body*, simply is not physical evidence." *Peplow*, ¶ 26 (emphasis added). The State's arguments to the contrary are unavailing.

¶17 The State does not ask us to overrule *Peplow*. We hold that *Peplow* is dispositive in the present case. Its language affords but one interpretation. Until Harrison's blood was "obtained or collected for analysis, it simply [could not] be considered 'physical evidence' as set forth in § 45-7-207, MCA, or a 'thing presented to the senses,' as explained in § 26-1-101(2), MCA." *Peplow*, ¶ 26. Because Harrison's "blood alcohol level cannot be determined until . . . she expels either a sample of blood, air, or urine, such fluids simply cannot be considered physical evidence prior to being removed from the body." *Peplow*, ¶ 26. Consistent with this precedent, we conclude that "physical evidence of [Harrison's] alcohol content is limited to that which is collected for analysis of [her] blood or breath." *Peplow*, ¶ 26.

¶18 Finally, we reject the State's argument that a ruling in Harrison's favor will tie the hands of law enforcement in conducting investigations. As noted, the law authorizes a search warrant to obtain blood samples to detect the presence of alcohol or drugs. Section 46-5-224(1), MCA. Harrison's actions at the hospital to evade the ordered blood draw resulted in her conviction for escape, and conceivably could have garnered an additional charge for obstructing a peace officer under § 45-7-302, MCA. In other words, there are specific statutory tools to ensure accountability for offenders who impede lawful investigations.

8

**CONCLUSION**

¶19    We conclude that the District Court erred in denying Harrison's motion to dismiss when it determined that Harrison's blood, "while still within [her] body, constituted physical evidence subject to illegal tampering." *Peplow*, ¶ 28. We reverse Harrison's conviction for tampering with evidence and remand for entry of judgment consistent with this opinion.


                                                        /S/ BETH BAKER

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

Justice Michael E Wheat, dissenting.


¶20    I dissent from the Court's decision reversing the District Court's denial of Harrison's motion to dismiss the tampering with evidence charge brought against her after she fled the hospital to avoid having her blood drawn pursuant to a lawful warrant. I conclude the factual distinctions in *Peplow* are significant and render *Peplow* inapposite authority for the case before us. Additionally, the 2011 legislative changes to the statutes applied in *Peplow* and applicable to the case at bar require a new analysis and application to the facts currently before us.

¶21    As noted by the majority, Peplow, after crashing his vehicle, left the scene of the accident before officers arrived. As Peplow walked along the road and away from the

9

accident scene, a passing couple asked if he needed assistance but he declined. The couple called 9-1-1 and reported the accident and their suspicion that Peplow was intoxicated. Peplow went home, consumed alcohol, left home, went to a tavern, and consumed more alcohol. It was at the tavern that Montana Highway Patrol Officer Tom Hamilton, the officer dispatched to investigate the accident, located Peplow approximately 1 to 1.5 hours after the accident. Hamilton conducted a Horizontal Gaze Nystagmus (HGN) test which indicated Peplow was highly impaired. Subsequent detention center tests indicated that Peplow was intoxicated with a .202 blood alcohol level.

¶22 Unlike the facts in *Peplow*, Harrison was pulled over for driving at night with no headlights. The officer, after observing signs of intoxication, conducted field sobriety tests that indicated that Harrison was intoxicated. Of the eighteen indicators measured in field sobriety tests, Harrison displayed fifteen indicators of impairment. After she refused to provide a preliminary breath test, she was arrested. She subsequently withdrew her implied consent to provide a blood sample. Based upon Harrison's extensive DUI history, the arresting officer obtained a telephonic warrant to collect a blood sample from Harrison pursuant to § 61-8-402(5), MCA, and transported her to the hospital for the blood draw procedure. While the officer was completing the necessary paperwork, Harrison fled the hospital and hid until the following day at which time blood test results were no longer relevant to her charge of DUI.

10

¶23 A significant and critical factual distinction between *Peplow* and the case before us is that when Peplow went home after the accident and drank three double shots of whiskey, went to the tavern and began drinking a beer, he was not under lawful arrest, in custody, or subject to a warrant obtained in accordance with statutory requirements. No officer had observed Peplow or performed field sobriety tests to determine whether he was impaired or intoxicated at the time of the accident. Moreover, there was no judicial determination—through application for and acquisition of a warrant—that evidence of impairment existed prior to Peplow altering his blood alcohol content by consuming alcohol after the accident. Consequently, our ruling that consuming alcohol after a vehicle accident did not constitute tampering with physical evidence was the correct ruling in *Peplow*. That narrow ruling, however, does not apply to this case.

¶24 The *Peplow* Court was constrained in its interpretation and application of certain relevant statutes by both the facts in *Peplow* as well as the language of the statutes as they existed at that time. I acknowledge that the tampering with evidence statute applied in *Peplow*, § 45-7-207, MCA, with the exception of two minor word changes in 2009, is identical to the statute applied in this case When the *Peplow* Court analyzed the tampering statute, it noted that the words "physical evidence" were not defined in the criminal code. Consequently, it turned to the general definition of "evidence" set forth in the Montana Rules of Evidence, and while the definition of "evidence" contained "things presented to the senses," the *Peplow* Court concluded that blood alcohol content (BAC) within the body did not constitute such a "thing." *Peplow*, ¶ 22.

11

¶25 Subsequent to *Peplow*, the Montana Legislature revised parts of the criminal code and the motor vehicle statutes, including § 61-8-402, MCA, and § 46-5-224, MCA. At the time *Peplow* was decided, § 61-8-402, MCA, the "implied consent" statute in the Motor Vehicles title of the Montana statutes, did not include a section authorizing law enforcement officers to apply for a search warrant to collect a blood sample if the arrested person refused to agree to a blood draw. In 2011, the Legislature added subsection (5) which provides in relevant part, "If the arrested person has refused to provide a . . . blood . . . sample under 61-8-409 . . . the officer may apply for a search warrant to be issued pursuant to 46-5-224 to collect a sample of the person's blood for testing." Section 61-8-402(5), MCA.

¶26 A search warrant requires a neutral third party—a judge or magistrate—to assess the evidence presented by law enforcement to determine the existence of probable cause. In this case, the arresting officer obtained a telephonic warrant after a judge determined probable cause existed and that a blood test was relevant evidence and warranted based upon the results of Harrison's field sobriety tests and the officer's observations. At the time the warrant was issued, Harrison became obligated to allow a blood draw. As noted by the Arizona Court of Appeals in *State v. Clary*, 2 P.3d 1255, ¶ 16 (Ariz. 2000), "A search warrant is a court order that authorizes police to intrude into an individual's privacy." In *Clary*, the court described BAC evidence as "critical and often dispositive in DUI cases," and concluded that a warrant for a blood draw in a DUI case could be

12

executed through the use of reasonable force if necessary. *Clary*, ¶¶ 19 and 28 n. 5. Decisions such as *Clary* illustrate the significance of the power of the search warrant.

¶27 Also in 2011, the Legislature amended § 46-5-224, MCA. Prior to that amendment § 46-5-224, MCA, provided that "A warrant may be issued under this section to search for and seize any: (1) evidence; (2) contraband, or (3) person for whose arrest there is probable cause, for whom there has been a warrant of arrest issued, or who is unlawfully restrained." After 2011, § 46-5-224(1), MCA, provides: "evidence, including blood samples that may yield evidence of any measured amount or detected presence of alcohol or drugs in a person's body when subjected to testing." With this revision, the Legislature declared that "evidence" seizable by search warrant included a blood sample drawn to ascertain a person's BAC.

¶28 I conclude that these legislative revisions state that a blood sample is "evidence" that may be specified in a search warrant; consequently, such blood evidence is "physical evidence" and a "thing" that may not be tampered with. This interpretation comports with our rule of statutory construction that "specific provisions prevail over general provisions." *State v. Plouffe*, 2014 MT 183, ¶ 27, 375 Mont. 429, 329 P.3d 1255. In other words, relying on the revised specific provisions in the criminal procedure and DUI statutes is more appropriate than relying on the general evidence statutes as was required in *Peplow*.

¶29 I therefore conclude that under the facts in this case, Harrison's blood alcohol content within her body became evidence upon her arrest and the issuance of the search

warrant. It also became a "thing" with which she was not allowed to tamper. This is not a novel conclusion. *See, e.g., Botka v. Sec'y, Dep't of Corr*., 2012 U.S. Dist. LEXIS 139062, 2012 WL 4466489 (Fla.), in which the U.S. District Court for the Middle District of Florida, Orlando Division, applying a statute almost identical to our tampering statute, found that a "person's blood alcohol level does constitute a 'thing' for purposes of the Tampering with Evidence statues [sic]."

¶30 I agree with the majority that in cases involving an escapee or other offender who impedes lawful investigations, law enforcement may charge him or her with escape and/or obstructing a peace officer, in addition to the original underlying charge or charges. However, for the reasons set forth in this Dissent, I believe under circumstances such as those presented in this case, our statutes support being able to charge the offender with tampering with physical evidence as well.

¶31 For these reasons, I would affirm the District Court's denial of Harrison's motion to dismiss the evidence tampering charge. I respectfully dissent from the majority's failure to do so.

/S/ MICHAEL E WHEAT

Chief Justice Mike McGrath and Justice Laurie McKinnon join the Dissent of Justice Michael E Wheat.

/S/ MIKE McGRATH
/S/ LAURIE McKINNON

14